

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

ELMER DE JESUS ALAS CANDRAY,
    a/k/a "German Alexander Ramirez Lopez,"
    a/k/a "Buky,"
    a/k/a "Desquiciado,"
    (Counts 1-4, 8-13)

HENRY LEONEL BARRERA AYALA,
    a/k/a "Cusuco,"
    a/k/a "Centinela,"
    a/k/a "Lil Player,"
    (Counts 1-9)

JOSE MANUEL LOZANO DURAN,
    a/k/a "Neyka,"
    a/k/a "Ney,"
    a/k/a "Clandestino,"
    (Counts 1, 8)

ADONIS ADALBERTO MARTINEZ AYALA,
    a/k/a "Monito,"
    a/k/a "Malvado,"
    (Counts 1, 8)

and

EVER BLADIMIR MELENDEZ GARCIA,
    a/k/a "Kevin Garcia,"
    a/k/a "Tun Tun,"
    a/k/a "Rifle,"
    a/k/a "Fleri,"
    (Counts 1, 8-11)

        *Defendants.*

**Filed Under Seal**

Criminal No. 1:22-CR-178

Count 1:
Conspiracy to Participate in a
Racketeering Enterprise
(18 U.S.C. § 1962(d))

Counts 2, 5, 8, 9, and 12:
Conspiracy to Commit Murder in Aid
of Racketeering Activity
(18 U.S.C. § 1959(a)(5))

Counts 3, 6, 10, and 13:
Murder in Aid of Racketeering
Activity
(18 U.S.C. §§ 1959(a)(1) and 2)

Counts 4, 7, and 11:
Use of a Firearm During a Crime of
Violence Causing Death
(18 U.S.C. §§ 924(c)(1)(A)(iii), (j)(1),
and 2)

Forfeiture Notice
(18 U.S.C. §§ 924(d)(1) and 1963,
28 U.S.C. § 2461(c))

SECOND SUPERSEDING INDICTMENT

October 2023 Term – at Alexandria

Count One

*(Conspiracy to Participate in a Racketeering Enterprise)*

THE GRAND JURY CHARGES THAT:

At all times relevant to this Second Superseding Indictment:

General Allegations

1.      *La Mara Salvatrucha*, also known as MS-13, was a gang composed primarily of immigrants or descendants of immigrants from Central America, with members operating in the Commonwealth of Virginia, including in Fairfax County, Prince William County, Alexandria, and Richmond, and throughout the United States.

2.      In the United States, MS-13 has been functioning since at least the 1980s.   MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against more established gangs in the area.   MS-13 quickly spread to states across the country, including Virginia.

3.      MS-13 was a transnational criminal organization and was one of the largest street gangs in the United States.   Gang members actively recruited members, including juveniles, from communities with a large number of Central American immigrants.

4.      Members of MS-13 from time to time signified their membership by wearing tattoos reading "*MARA SALVATRUCHA*," "MS," "MS-13," or similar tattoos, often written in gothic lettering.   Members also signified their membership through tattoos of devil horns in various places on their bodies.   Members sometimes avoided conspicuous MS-13 tattoos, instead wearing discreet ones such as "503," spider webs, three dots in a triangle formation signifying "*mi vida loca*," or clown faces with phrases such as "laugh now, cry later."   Some MS-13 members

2

chose not to have tattoos at all or placed them on areas such as the hairline where they could be easily covered, in order to conceal their gang affiliation from law enforcement.

5.     The gang colors of MS-13 were blue, black, and white, and members often wore clothing, particularly sports jerseys, with the number "13," or with numbers that, when added together, totaled 13, such as "76."   MS-13 members also wore blue and white clothing to represent their membership, including blue and white shoes such as the Nike "Cortez."   As with tattoos, some MS-13 members selected more discreet ways of dressing in order to signify their membership and at the same time avoid detection by law enforcement.

6.     MS-13 members referred to one another by their gang monikers, or "*tacas*," and often did not know fellow gang members except by their gang names.

7.     Members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons.   MS-13 members required that all individuals show respect and deference to the gang and its membership.   To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence.

8.     Members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, and drug trafficking, as well as attempts and conspiracies to commit such offenses.   MS-13 members and associates were required to commit acts of violence to maintain membership and discipline within the gang.   Participation in criminal activity by a member, particularly in violent acts directed at rival gangs or as directed by gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing position in the gang, and opened the door to a promotion to a leadership position.   One of the principal rules of MS-13 was that its members must attack and kill rivals whenever possible.

Rivals were often referred to as "*chavalas*." MS-13 in the area of Fairfax County, Virginia, maintained rivalries with, among others, the 18th Street gang.

9.     Prospective members who sought to join MS-13 were required to complete an initiation process. Individuals who associated and committed crimes with the gang were called "*esquinas*," "*paros*," or "*observaciones*." Individuals who were attempting to join the gang were called "*chequeos*," or "cheqs." *Chequeos* underwent a probationary period during which they were required to commit crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang. To join MS-13 and become full members or "homeboys," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang. During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number 13.

10.     Within MS-13, the primary unit of organization was known as a "clique," that is, smaller groups operating in a specific city or region. Cliques operated under the umbrella rules of MS-13. MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. In and around Virginia, these cliques included, among others, the *Uniones Locos Salvatrucha* ("ULS" or "*Uniones*"), *Sitios Locos Salvatrucha* ("STLS" or "*Sitios*"), *Pinos Locos Salvatrucha* ("PLS" or "*Pinos*"), Herndon City *Locos Salvatrucha* ("HCLS"), Normandie *Locos Salvatrucha* ("NLS" or "Normandie"), Sailors *Locos Salvatrucha* Westside ("SLSW" or "Sailors"), Fulton *Locos Salvatrucha* ("FLS" or "Fulton"), Parkview *Locos Salvatrucha* ("PVLS" or "Parkview"), and Gangster *Locos Salvatrucha* ("GLS" or "Gangsters").

4

11.     The following individuals, including the defendants whose names will hereinafter appear in bold font and capital letters, were members and associates of the ULS clique of MS-13:

| Name | Gang Moniker(s) / Nickname(s) | Hereinafter |
|---|---|---|
| **Elmer De Jesus Alas Candray** | **Buky, Desquiciado** | **"ALAS"** |
| **Henry Leonel Barrera Ayala** | **Cusuco, Centinela, Lil Player** | **"BARRERA"** |
| **Jose Manuel Lozano Duran** | **Neyka, Ney, Clandestino** | **"LOZANO"** |
| **Adonis Adalberto Martinez Ayala** | **Monito, Malvado** | **"MARTINEZ"** |
| **Ever Bladimir Melendez Garcia** | **Tun Tun, Rifle, Fleri** | **"MELENDEZ"** |
| Jose Denis Sanchez Guevara | Chino, Nochi, Culpable | "Guevara" |
| Jose Alexander Garcia Sanchez | Dexter, Profugo | "Garcia" |
| Jose Manuel Vasquez Moz | Nene, Bombo | "Vasquez" |

12.     Each clique was presided over by the "First Word," the leader or president of the clique.   The leader was also sometimes referred to as the "*Primera Palabra*" or "*Corredor*."   The "Second Word," or "*Segunda Palabra*," was the second-in-command of the clique.   General members were required to take orders from the First Word and Second Word.

13.     MS-13 cliques kept in contact and reported to the leaders for their respective cliques, who were oftentimes based in various states or in El Salvador.   Cliques contacted their leaders based in other states or El Salvador using cellular telephones during clique meetings to keep them updated on gang business, for advice, and to resolve disagreements regarding operations among local cliques.   Incarcerated clique leaders based in El Salvador regularly communicated and directed orders to Virginia-based cliques through phones smuggled into Salvadoran prisons.

14.     MS-13 members met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members, with the goal of inciting and

encouraging further violence.   Each clique held clique meetings where business specific to that clique was discussed.   Any perceived indiscretions by members or violations of MS-13 rules were talked about at clique meetings and punishments, also known as *"calentones,"* "corrections," "courts," or "violations," were issued.   Violations often took the form of beatings by fellow MS-13 members.   More serious violations resulted in the issuance of a "greenlight."   A greenlight was an order and/or approval to kill the supposed violator.

15.   MS-13 leaders from various cliques also held regional meetings to discuss issues between cliques and criminal ventures among the cliques.   Clique leaders from across the United States, from other countries, and within regions of the United States would meet or communicate by telephone conference to discuss gang rules and gang business, to resolve problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

16.   MS-13 received money and income from sources including member dues and the extortion or "taxing" of brothels and other businesses, as well as drug trafficking and the commission of robberies.   Such funds were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members who were imprisoned in the United States, both inside and outside of Virginia, and in El Salvador.

17.   MS-13 members communicated about gang activities with other MS-13 members in Virginia and elsewhere using cell phones, text messaging, social media applications such as Facebook, email, and other modes of communication.   Additionally, MS-13 members used national and international money wire transfers to conduct and promote gang activities.

## The Racketeering Enterprise

18.     At all times relevant to this Second Superseding Indictment, MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce (the "MS-13 Enterprise" or the "Enterprise"). The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.   At all times relevant to this Second Superseding Indictment, the Enterprise operated in the Eastern District of Virginia and elsewhere.

## Purposes of the Enterprise

19.     The purposes of the MS-13 Enterprise included, but were not limited to:

a.     Preserving and protecting the power, territory, reputation, and profits of the Enterprise through the use of intimidation, threats of violence, and violence, including assaults and murder;

b.     Promoting and enhancing the Enterprise and its leaders', members', and associates' activities, including, but not limited to, murder, extortion, drug trafficking, robbery, and other criminal activities;

c.     Keeping victims, potential victims, and community members in fear of the Enterprise through violence and threats of violence;

d.     Providing financial support and information to gang leaders, members, and associates, including individuals incarcerated in the United States and in El Salvador;

e.     Providing assistance to gang leaders, members, and associates who committed crimes on behalf of the Enterprise; and

7

f.      Hindering, obstructing, and preventing law enforcement officers from identifying participants in the Enterprise's criminal activity, from apprehending the perpetrators of those crimes, and from successfully prosecuting and punishing the offenders.

### Means and Methods of the Enterprise

20.     Among the means and methods by which the members and associates of the MS-13 Enterprise conducted and participated in the conduct of the affairs of the Enterprise were the following:

a.      The members and associates of MS-13 used intimidation, threats of violence, and violence, including assaults and murder, to preserve, expand, and protect MS-13's territory and activities, to promote and enhance its prestige, reputation, and position in the community, and to discipline gang members who had been disloyal or had violated gang rules;

b.      The members and associates of MS-13 acquired, possessed, shared, carried, and used deadly weapons, including firearms, to harm and kill rivals and in furtherance of their drug trafficking activities;

c.      The members and associates of MS-13 attended regular gang meetings and communicated with other MS-13 members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; MS-13 leaders, members, and associates who had been arrested or incarcerated; the discipline of MS-13 leaders, members, and associates who had violated gang rules; police interactions with MS-13 leaders, members, and associates; the identities of individuals suspected of cooperating with law enforcement and proposed actions to be taken against them; and plans and agreements regarding the commission of future crimes, as well as ways to conceal these crimes;

d.      The members and associates of MS-13 also communicated with other MS-13 members in Virginia and elsewhere, and represented their gang allegiance, through social media applications such as Facebook, including by posting photographs of themselves with other gang members, showing gang hand signs, wearing colors or clothing associated with MS-13, posing with weapons or gang-related graffiti, and by sending and/or posting messages referencing their affiliation with MS-13;

e.      The members and associates of MS-13 financed the Enterprise through a variety of activities, including the extortion of money – sometimes referred to as "rent" – from legitimate and illegitimate businesses operating on the gang's turf, as well as through the commission of robberies;

f.      The members and associates of MS-13 distributed and agreed to distribute or assist distribution of controlled substances on behalf of the gang;

g.      The funds raised by the gang were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members, including those imprisoned in the United States, inside and outside of Virginia, and in El Salvador;

h.      The members and associates of MS-13 hindered and obstructed the efforts of law enforcement to identify, apprehend, and successfully prosecute and punish gang members;

i.      The members and associates of MS-13 investigated rival gang members or other persons targeted for violence; obtained information about such targets, including locations frequented by them; and used such information in their plans to attack such targets; and

j.      The members and associates of MS-13 agreed that acts involving murder, including conspiracy and attempts to commit murder, and other acts of violence, would be committed by members and associates of MS-13 against rival gang members and persons deemed

9

as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

<u>The Racketeering Conspiracy</u>

21.    Beginning on a date unknown, but at least in and around 2017, and continuing through the present, in the Eastern District of Virginia, and elsewhere, the defendants,

**ELMER DE JESUS ALAS CANDRAY, a/k/a "German Alexander Ramirez Lopez,"**
**a/k/a "Buky," a/k/a "Desquiciado,"**

**HENRY LEONEL BARRERA AYALA, a/k/a "Cusuco," a/k/a "Centinela,"**
**a/k/a "Lil Player,"**

**JOSE MANUEL LOZANO DURAN, a/k/a "Neyka," a/k/a "Ney," a/k/a "Clandestino,"**

**ADONIS ADALBERTO MARTINEZ AYALA, a/k/a "Monito," a/k/a "Malvado,"**

and

**EVER BLADIMIR MELENDEZ GARCIA, a/k/a "Kevin Garcia," a/k/a "Tun Tun,"**
**a/k/a "Rifle," a/k/a "Fleri"**

being persons employed by and associated with MS-13, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire and agree with each other, with JOSE DENIS SANCHEZ GUEVARA, a/k/a "Chino," a/k/a "Nochi," a/k/a "Culpable," JOSE ALEXANDER GARCIA SANCHEZ, a/k/a "Dexter," a/k/a "Profugo," and JOSE MANUEL VASQUEZ MOZ, a/k/a "Nene," a/k/a "Bombo," who are not charged herein, and with others known and unknown to the Grand Jury, to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the MS-13 Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), which pattern of racketeering activity consisted of multiple:

(a)    Acts involving murder, chargeable under Virginia Code §§ 18.2-32, 18.2-26, 18.2-22, and 18.2-18;

10

(b)     Offenses involving drug trafficking, in violation of 21 U.S.C. §§ 841 and

846; and

(c)     Acts indictable under 18 U.S.C. § 1512 (relating to tampering with a

witness, victim, or an informant).

22.     It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

<u>Overt Acts</u>

23.     In furtherance of the conspiracy, and to effect the object thereof, the defendants and others known and unknown to the Grand Jury committed and caused to be committed the following acts, among others, in the Eastern District of Virginia, and elsewhere:

a.     On or about April 4, 2018, in Fairfax County, Virginia, within the Eastern District of Virginia, defendant ALAS, a/k/a "Buky," possessed a loaded Glock, model 19, 9mm firearm bearing serial no. BADS664.

**<u>Drug Trafficking Activities</u>**

b.     Beginning on a date unknown, but at least in and around 2017, and continuing through the present, defendants ALAS, a/k/a "Buky," BARRERA, a/k/a "Cusuco," LOZANO, a/k/a "Neyka," MARTINEZ, a/k/a "Monito," and MELENDEZ, a/k/a "Tun Tun," conspired and agreed with each other and with others known and unknown to the Grand Jury to distribute marijuana and cocaine in the Eastern District of Virginia and elsewhere.

c.     Beginning on a date unknown, but since at least in and around 2017, and continuing through the present, MS-13 members and associates regularly obtained marijuana and

cocaine for retail distribution in the Washington, D.C., metropolitan area, where they and other MS-13 members and associates would sell it.

     d.    During the life of the conspiracy, defendants **ALAS, a/k/a "Buky,"** **BARRERA, a/k/a "Cusuco," LOZANO, a/k/a "Neyka," MARTINEZ, a/k/a "Monito,"** and **MELENDEZ, a/k/a "Tun Tun,"** and other MS-13 members and associates sent money generated by ULS' drug sales to individuals in other states and in Central American countries via money transfer services to benefit the MS-13 Enterprise.

     e.    Beginning at least in and around January 2019, and continuing through August 2022, defendant **ALAS, a/k/a "Buky,"** maintained written records of funds generated via ULS' drug sales.

     f.    On or about August 9, 2022, in Manassas, Virginia, within the Eastern District of Virginia, defendant **ALAS, a/k/a "Buky,"** possessed with the intent to distribute marijuana and also possessed: digital scales; packaging materials; a Springfield, model XD, .45 caliber pistol bearing serial no. US782276; an Amadeo Rossi SA, model M971, .357 caliber revolver bearing serial no. F103639; and a Colt, model Single Action Army, .44 special caliber revolver bearing serial no. 23041SA.

     g.    On or about September 23, 2022, in Fairfax County, Virginia, defendant **MELENDEZ, a/k/a "Tun Tun,"** possessed a Ruger 9mm pistol bearing serial no. 457-59268 and a Rock Island Armory .22 TCM caliber pistol bearing serial no. TCM004446.

**June 2019 Murder of J.L.G.M.**

     h.    In and around June 2019, defendants **ALAS, a/k/a "Buky,"** and **BARRERA, a/k/a "Cusuco,"** and other members and associates of MS-13, including co-conspirators Guevara, a/k/a "Chino," and Garcia, a/k/a "Dexter," conspired to murder one or more

individuals who frequently gathered at certain wooded locations in ULS' perceived turf in Reston, Virginia, within the Eastern District of Virginia.

i.      On or about June 21, 2019, co-conspirator Garcia, a/k/a "Dexter," reserved a room at the Extended Stay America hotel located at 8281 Willow Oaks Corporate Drive in Fairfax County, Virginia.

j.      On or about June 22, 2019, defendants **ALAS, a/k/a "Buky,"** and **BARRERA, a/k/a "Cusuco,"** gathered with co-conspirators Guevara, a/k/a "Chino," Garcia, a/k/a "Dexter," and other MS-13 members and associates known and unknown to the Grand Jury in that hotel room, where the MS-13 members and associates proceeded to discuss a plan wherein they would travel to ULS' perceived turf in Reston, Virginia, for the purpose of committing a murder.

k.      On or about June 23, 2019, MS-13 members and associates known and unknown to the Grand Jury armed themselves with a 9mm firearm, a .45 caliber firearm, and at least one machete.

l.      On or about June 23, 2019, defendants **ALAS, a/k/a "Buky,"** and **BARRERA, a/k/a "Cusuco,"** together with co-conspirators Guevara, a/k/a "Chino," Garcia, a/k/a "Dexter," and other MS-13 members and associates known and unknown to the Grand Jury, traveled in at least two vehicles to the Hunters Woods area of Reston, Virginia.   Co-conspirator Garcia, a/k/a "Dexter," drove one of those vehicles, and co-conspirator Guevara, a/k/a "Chino," rode as a passenger in another.

m.      On or about June 23, 2019, defendant **BARRERA, a/k/a "Cusuco,"** and co-conspirators Garcia, a/k/a "Dexter," and Guevara, a/k/a "Chino," together with another MS-13 member and associate known to the Grand Jury, remained in the vehicles in which they had arrived

at the Hunters Woods area of Reston, Virginia, while defendant **ALAS, a/k/a "Buky,"** and other MS-13 members and associates known and unknown to the Grand Jury exited those vehicles and sought an individual to murder.

        n.       On or about June 23, 2019, in Fairfax County, Virginia, members and associates of MS-13 murdered an individual, identified for the purposes of this Second Superseding Indictment as J.L.G.M. Defendant **ALAS, a/k/a "Buky,"** and an MS-13 member and associate known to the Grand Jury shot J.L.G.M. with firearms, and other MS-13 members and associates known and unknown to the grand jury chopped him with at least one machete.

        o.       On or about June 23, 2019, defendants **ALAS, a/k/a "Buky,"** and **BARRERA, a/k/a "Cusuco,"** together with co-conspirators Guevara, a/k/a "Chino," and Garcia, a/k/a "Dexter," and other MS-13 members and associates known and unknown to the Grand Jury, left the scene of J.L.G.M.'s murder and returned to the hotel room that co-conspirator Garcia, a/k/a "Dexter," had reserved.

        p.       Following the murder, MS-13 members and associates known and unknown to the Grand Jury ascended in rank within the MS-13 Enterprise as a result of their participation in J.L.G.M.'s murder.

### September 2020 Murder of I.J.P.G.

        q.       In and around September 2020, MS-13 members and associates believed an individual, who for purposes of this Second Superseding Indictment will be identified as I.J.P.G., to be a *chavala* and conspired to murder her.

        r.       On or about September 17, 2020, defendant **BARRERA, a/k/a "Cusuco,"** exchanged messages with I.J.P.G. via Snapchat. Shortly thereafter, I.J.P.G. left her residence and entered a vehicle.

s.      On or about September 17, 2020, defendant **BARRERA, a/k/a "Cusuco,"** together with other MS-13 members and associates known and unknown to the Grand Jury, murdered I.J.P.G. by shooting her with firearms in Reston, Virginia.

### September 2020 Conspiracy to Murder O.G.M. and R.A.P.S.

t.      In and around September 2020, defendants **ALAS, a/k/a "Buky,"** and **BARRERA, a/k/a "Cusuco,"** and other MS-13 members and associates known and unknown to the Grand Jury, conspired to murder two individuals in Reston, Virginia.  For purposes of this Second Superseding Indictment, one individual will be identified as O.G.M. and the other as R.A.P.S.

u.      On or about September 26, 2020, defendant **BARRERA, a/k/a "Cusuco,"** sent defendant **ALAS, a/k/a "Buky,"** a message via WhatsApp.  The message contained two requests addressed to MS-13 leadership seeking authorization to murder O.G.M. and R.A.P.S. The request to murder O.G.M. was based on O.G.M.'s sales of marijuana and cocaine on ULS' perceived turf and O.G.M.'s calls to the police about at least one ULS homeboy.  The request to murder R.A.P.S. stated that R.A.P.S. stole from stores and caused problems that brought an unwanted police presence to ULS' perceived turf and that R.A.P.S. sold drugs with O.G.M.

### Autumn 2020 Conspiracy to Murder D.A.A.

v.      In and around November 2020, defendants **ALAS, a/k/a "Buky,"** **BARRERA, a/k/a "Cusuco," LOZANO, a/k/a "Neyka," MARTINEZ, a/k/a "Monito,"** and **MELENDEZ, a/k/a "Tun Tun,"** and co-conspirator Vasquez, a/k/a "Nene," identified an individual who, for purposes of this Second Superseding Indictment will be identified as D.A.A., as someone who had disrespected MS-13 and threatened its control of its perceived turf in Reston, Virginia.

w.       On or about November 16, 2020, defendant **ALAS, a/k/a "Buky,"** sent defendant **BARRERA, a/k/a "Cusuco,"** a text message via WhatsApp written in coded language requesting MS-13 leadership's permission to kill D.A.A., handwritten drafts of which were found in a notebook recovered from the bedroom of defendant **ALAS, a/k/a "Buky,"** in August 2022.

x.       On or about November 16, 2020, defendant **BARRERA, a/k/a "Cusuco,"** told defendant **ALAS, a/k/a "Buky,"** via WhatsApp that the message was well-written, that MS-13 members in El Salvador would correct spelling errors contained therein, and that they would wait to see whether MS-13 authorized the clique's request to kill D.A.A.

y.       On or about November 20, 2020, defendant **BARRERA, a/k/a "Cusuco,"** told defendant **LOZANO, a/k/a "Neyka,"** via WhatsApp that they were awaiting MS-13 leadership's approval to kill D.A.A. and would soon kill him.

z.       On or about November 20, 2020, defendant **ALAS, a/k/a "Buky,"** sent defendant **BARRERA, a/k/a "Cusuco,"** two additional versions of the draft message referenced above via WhatsApp.

aa.      On or about November 21, 2020, in Fairfax County, Virginia, defendant **MARTINEZ, a/k/a "Monito,"** and at least one other MS-13 member and associate attempted to locate D.A.A.

bb.      On or about November 22, 2020, defendants **ALAS, a/k/a "Buky,"** and **BARRERA, a/k/a "Cusuco,"** further discussed killing D.A.A. via WhatsApp.

cc.      On or about November 25, 2020, defendant **ALAS, a/k/a "Buky,"** messaged defendant **BARRERA, a/k/a "Cusuco,"** via WhatsApp and told him that MS-13 leadership had approved ULS' request to murder D.A.A.

dd.     On or about November 25, 2020, defendant **ALAS, a/k/a "Buky,"** told defendant **BARRERA, a/k/a "Cusuco,"** via WhatsApp that he would speak with defendant **LOZANO, a/k/a "Neyka,"** and other MS-13 members and associates and begin to plan D.A.A.'s murder.

ee.     On or about November 25, 2020, defendants **ALAS, a/k/a "Buky,"** and **BARRERA, a/k/a "Cusuco,"** discussed via WhatsApp the importance of killing D.A.A. quickly because D.A.A. had been greenlit.

ff.     On or about November 27, 2020, in Fairfax County, Virginia, MS-13 members and associates followed and surveilled D.A.A. for the purpose of attacking and killing him.

gg.     On or about November 29, 2020, defendant **BARRERA, a/k/a "Cusuco,"** told defendant **ALAS, a/k/a "Buky,"** via WhatsApp that he wanted defendant **MARTINEZ, a/k/a "Monito,"** to participate in D.A.A.'s murder so that defendant **MARTINEZ, a/k/a "Monito,"** could rise in rank within the MS-13 Enterprise.

hh.     On or about November 29, 2020, defendants **BARRERA, a/k/a "Cusuco,"** and **MELENDEZ, a/k/a "Tun Tun,"** discussed via WhatsApp their willingness to murder D.A.A. and MS-13 leadership's desire that junior members ascend in rank within the Enterprise by participating in D.A.A.'s murder.

ii.     On or about November 29, 2020, defendant **BARRERA, a/k/a "Cusuco,"** and defendant **LOZANO, a/k/a "Neyka,"** discussed murdering D.A.A. via WhatsApp and agreed that if D.A.A. was not killed by other ULS members and associates that day, then they themselves would find and murder D.A.A. with defendant **MARTINEZ, a/k/a "Monito,"** so that defendant **MARTINEZ, a/k/a "Monito,"** could increase his position within the MS-13 Enterprise.

jj.     On or about November 30, 2020, defendant **LOZANO, a/k/a "Neyka,"** and defendant **BARRERA, a/k/a "Cusuco,"** discussed via WhatsApp a plan to murder D.A.A. the following day with defendant **MARTINEZ, a/k/a "Monito,"** so that defendant **MARTINEZ, a/k/a "Monito,"** could rise in rank within the MS-13 Enterprise.

kk.     On or about November 30, 2020, defendant **BARRERA, a/k/a "Cusuco,"** and defendant **MARTINEZ, a/k/a "Monito,"** discussed via WhatsApp having a high-ranking MS-13 member accompany them to the murder of D.A.A. so that their participation in D.A.A.'s murder could be easily confirmed by MS-13 leadership.

**March 2021 Murder of S.A.T.L.**

ll.     In and around March 2021, MS-13 members and associates believed an individual, who for purposes of this Second Superseding Indictment will be identified as S.A.T.L., to be a *chavala* and conspired to murder him.

mm.     On or about March 11, 2021, in Fairfax County, Virginia, defendants **ALAS, a/k/a "Buky,"** and **MELENDEZ, a/k/a "Tun Tun,"** co-conspirator Vasquez, a/k/a "Nene," and another MS-13 member and associate known to the Grand Jury, surveilled S.A.T.L. and waited for an opportunity to murder him.

nn.     On or about March 11, 2021, in Fairfax County, Virginia, defendant **ALAS, a/k/a "Buky,"** utilized a cell phone to communicate with defendant **BARRERA, a/k/a "Cusuco,"** about surveilling and murdering S.A.T.L.

oo.     On or about March 11, 2021, ULS members and associates informed defendant **ALAS, a/k/a "Buky,"** that they had located S.A.T.L. in Reston, Virginia.

pp.     On or about March 11, 2021, defendant **BARRERA, a/k/a "Cusuco,"** traveled from Maryland to Virginia via the Washington Metro rapid-transit system to participate in S.A.T.L.'s murder.

qq.     On or about March 11, 2021, in Fairfax County, Virginia, defendants **ALAS, a/k/a "Buky,"** and **MELENDEZ, a/k/a "Tun Tun,"** co-conspirator Vasquez, a/k/a "Nene," and another MS-13 member and associate known to the Grand Jury went to an apartment complex on Winterthur Court in Reston, Virginia.   Co-conspirator Vasquez, a/k/a/ "Nene," drove defendant **ALAS, a/k/a "Buky,"** and another MS-13 member and associate known to the Grand Jury.   Defendant **ALAS, a/k/a "Buky,"** got out of the vehicle, while Vasquez, a/k/a "Nene," and another MS-13 member and associate known to the Grand Jury remained in the vehicle nearby to act as lookouts.   Defendant **ALAS, a/k/a "Buky,"** murdered S.A.T.L. by shooting him with a firearm.

rr.     On or about March 11, 2021, defendant **ALAS, a/k/a "Buky,"** co-conspirator Vasquez, a/k/a "Nene," and another MS-13 member and associate known to the Grand Jury fled the scene of S.A.T.L.'s murder in a vehicle.

ss.     Following the murder, on or about March 11, 2021, defendant **ALAS, a/k/a "Buky,"** and co-conspirator Vasquez, a/k/a "Nene," traveled to the residence of defendant **MARTINEZ, a/k/a "Monito."**  Defendants **ALAS, a/k/a "Buky,"** and **MARTINEZ, a/k/a "Monito,"** and co-conspirator Vasquez, a/k/a "Nene," then traveled to the Quality Inn located at 10653 Balls Ford Road in Prince William County, Virginia, within the Eastern District of Virginia, where an MS-13 associate obtained a room for them.

### The June 2022 Murder of F.R.A.R.

tt.  .   From in and around May 2022 through in and around June 2022, MS-13 members and associates conspired to murder an MS-13 associate whom they believed had disrespected the gang.  Defendant **ALAS, a/k/a "Buky,"** and other MS-13 members and associates known and unknown to the Grand Jury developed a plan that involved luring F.R.A.R. to a wooded location under the pretense that F.R.A.R. would be receiving a disciplinary gang beating for violating MS-13's rules when, in fact, he would be murdered, dismembered, and buried.

uu.   In and around June 2022, co-conspirator Vasquez, a/k/a "Nene," proposed Seneca Regional Park in Fairfax County, Virginia, as the location where F.R.A.R. could be murdered.  Defendant **ALAS, a/k/a Buky,"** co-conspirator Vasquez, a/k/a "Nene," and other MS-13 members and associates known to the Grand Jury traveled to Seneca Regional Park several times to plan F.R.A.R.'s murder.

vv.   In and around June 2022, defendant **ALAS, a/k/a "Buky,"** selected a specific location deep within Seneca Regional Park where he and other MS-13 members and associates would murder F.R.A.R. and bury his remains.  ULS marked a tree near the location with three X's to help guide them back to the spot where they would murder F.R.A.R.

ww.   On or about June 18, 2022, MS-13 members and associates known and unknown to the Grand Jury picked up F.R.A.R. from Reston, Virginia, and drove him to Seneca Regional Park in the vehicle of co-conspirator Vasquez, a/k/a "Nene."

xx.   On or about June 18, 2022, defendant **ALAS, a/k/a "Buky,"** together with MS-13 members and associates known and unknown to the Grand Jury, murdered F.R.A.R. in Seneca Regional Park in Fairfax County, Virginia.

yy.     On or about June 18, 2022, defendant **ALAS, a/k/a "Buky,"** together with MS-13 members and associates known and unknown to the Grand Jury, dismembered F.R.A.R. with knives.   MS-13 members and associates known and unknown to the Grand Jury also dug a hole in the ground and buried F.R.A.R.'s remains in Seneca Regional Park.

zz.     On or about June 18, 2022, co-conspirator Vasquez, a/k/a "Nene," and other MS-13 members and associates known and unknown to the Grand Jury, destroyed the phone that F.R.A.R. utilized that day.

aaa.     Several days after June 18, 2022, defendants **ALAS, a/k/a "Buky,"** and **MELENDEZ, a/k/a "Tun Tun,"** and co-conspirator Vasquez, a/k/a "Nene," gathered at the residence of defendant **ALAS, a/k/a "Buky,"** in Manassas, Virginia, where they burned F.R.A.R.'s birth certificate and the clothing and shoes F.R.A.R. was wearing when he was murdered.

bbb.     On or about August 9, 2022, in Manassas, Virginia, defendant **ALAS, a/k/a "Buky,"** possessed the knives used to dismember F.R.A.R.

**August 2022 Tampering**

ccc.     On or about August 17, 2022, in Fairfax County, Virginia, defendant **ALAS, a/k/a "Buky,"** instructed a relative to relay a message to defendant **MELENDEZ, a/k/a "Tun Tun,"** and other ULS members and associates.   Using coded language, defendant **ALAS, a/k/a "Buky,"** instructed defendant **MELENDEZ, a/k/a "Tun Tun,"** to get rid of ammunition, warned ULS members and associates that law enforcement had pictures of them, and advised them to move.

ddd.   On or about August 18, 2022, the relative relayed the message from defendant **ALAS, a/k/a "Buky,"** to co-conspirator Vasquez, a/k/a "Nene," who in turn relayed the message to defendant **MELENDEZ, a/k/a "Tun Tun,"** and other ULS members and associates.

<u>Special Sentencing Factors as to Count One</u>

24.    On or about June 23, 2019, in the Eastern District of Virginia, defendants **ALAS, a/k/a "Buky,"** and **BARRERA, a/k/a "Cusuco,"** and others known and unknown to the Grand Jury, while aiding and abetting each other, did willfully, deliberately, maliciously, and with premeditation kill J.L.G.M., in violation of Virginia Code §§ 18.2-32 and 18.2-18.

25.    On or about September 17, 2020, in the Eastern District of Virginia, defendant **BARRERA, a/k/a "Cusuco,"** and others known and unknown to the Grand Jury, while aiding and abetting each other, did willfully, deliberately, maliciously, and with premeditation kill I.J.P.G., in violation of Virginia Code §§ 18.2-32 and 18.2-18.

26.    On or about March 11, 2021, in the Eastern District of Virginia, defendants **ALAS, a/k/a "Buky,"** and **MELENDEZ, a/k/a "Tun Tun,"** and others known and unknown to the Grand Jury, while aiding and abetting each other, did willfully, deliberately, maliciously, and with premeditation kill S.A.T.L., in violation of Virginia Code §§ 18.2-32 and 18.2-18.

27.    On or about June 18, 2022, in the Eastern District of Virginia, defendant **ALAS, a/k/a "Buky,"** and others known and unknown to the Grand Jury, while aiding and abetting each other, did willfully, deliberately, maliciously, and with premeditation kill F.R.A.R., in violation of Virginia Code §§ 18.2-32 and 18.2-18.

(In violation of Title 18, United States Code, Section 1962(d).)

Count Two

*(Conspiracy to Commit Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.    At all times relevant to this Second Superseding Indictment, MS-13, as more fully described in Paragraphs One through Twenty of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein, including its leaders, members, and associates, constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), namely, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce.   The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.    At all times relevant to this Second Superseding Indictment, the above-described MS-13 Enterprise, through its leaders, members, and associates, engaged in racketeering activity, as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), namely, (1) acts involving murder, chargeable under Virginia Code §§ 18.2-32, 18.2-26, 18.2-22, and 18.2-18, (2) offenses involving drug trafficking, in violation of 21 U.S.C. §§ 841 and 846; and (3) acts indictable under 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant).

3.    In and around June 2019, within the Eastern District of Virginia, the defendants,

**ELMER DE JESUS ALAS CANDRAY, a/k/a "German Alexander Ramirez Lopez,"
a/k/a "Buky," a/k/a "Desquiciado,"**

and

**HENRY LEONEL BARRERA AYALA, a/k/a "Cusuco," a/k/a "Centinela,"
a/k/a "Lil Player,"**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and intentionally combine, conspire, confederate, and agree with each other, with JOSE DENIS SANCHEZ GUEVARA, a/k/a "Chino," a/k/a "Nochi," a/k/a "Culpable," and JOSE ALEXANDER GARCIA SANCHEZ, a/k/a "Dexter," a/k/a "Profugo," who are not charged herein, and with others known and unknown to the Grand Jury, to murder J.L.G.M., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-22 and 18.2-32.

(In violation of Title 18, United States Code, Section 1959(a)(5).)

## Count Three

### *(Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.       Paragraphs One and Two of Count Two of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.       On or about June 23, 2019, in Fairfax County, Virginia, within the Eastern District of Virginia, the defendants,

**ELMER DE JESUS ALAS CANDRAY, a/k/a "German Alexander Ramirez Lopez,"
a/k/a "Buky," a/k/a "Desquiciado,"**

and

**HENRY LEONEL BARRERA AYALA, a/k/a "Cusuco," a/k/a "Centinela,"
a/k/a "Lil Player,"**

together with JOSE DENIS SANCHEZ GUEVARA, a/k/a "Chino," a/k/a "Nochi," a/k/a "Culpable," and JOSE ALEXANDER GARCIA SANCHEZ, a/k/a "Dexter," a/k/a "Profugo," who are not charged herein, and with others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and intentionally murder J.L.G.M., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-32 and 18.2-18, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.)

## Count Four

*(Using and Carrying a Firearm During a Crime of Violence Causing Death)*

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 23, 2019, in Fairfax County, Virginia, within the Eastern District of

Virginia, the defendants,

**ELMER DE JESUS ALAS CANDRAY, a/k/a "German Alexander Ramirez Lopez,"**
**a/k/a "Buky," a/k/a "Desquiciado,"**

and

**HENRY LEONEL BARRERA AYALA, a/k/a "Cusuco," a/k/a "Centinela,"**
**a/k/a "Lil Player,"**

did knowingly and intentionally use and carry a firearm during and in relation to a crime of

violence for which they may be prosecuted in a court of the United States, namely, the murder of

J.L.G.M. in aid of racketeering activity, in violation of 18 U.S.C. §§ 1959(a)(1) and 2, as set forth

and charged in Count Three of this Second Superseding Indictment, and in the course of

committing said offense, did cause the death of J.L.G.M. through the use of a firearm, which killing

was murder, as defined in 18 U.S.C. § 1111, and did aid, abet, counsel, command, induce, and

cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii), (j)(1), and 2.)

## Count Five

*(Conspiracy to Commit Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.    Paragraphs One and Two of Count Two of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    In and around September 2020, within the Eastern District of Virginia, the defendant,

**HENRY LEONEL BARRERA AYALA, a/k/a "Cusuco," a/k/a "Centinela," a/k/a "Lil Player,"**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to murder I.J.P.G., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-22 and 18.2-32.

(In violation of Title 18, United States Code, Section 1959(a)(5).)

Count Six

*(Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.     Paragraphs One and Two of Count Two of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     On or about September 17, 2020, in Fairfax County, Virginia, within the Eastern District of Virginia, the defendant,

**HENRY LEONEL BARRERA AYALA, a/k/a "Cusuco," a/k/a "Centinela," a/k/a "Lil Player,"**

together with others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and intentionally murder I.J.P.G., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-32 and 18.2-18, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.)

<u>Count Seven</u>

*(Using and Carrying a Firearm During a Crime of Violence Causing Death)*

THE GRAND JURY FURTHER CHARGES THAT:

On or about September 17, 2020, in Fairfax County, Virginia, within the Eastern District of Virginia, the defendant,

**HENRY LEONEL BARRERA AYALA, a/k/a "Cusuco," a/k/a "Centinela,"**
**a/k/a "Lil Player,"**

did knowingly and intentionally use and carry a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the murder of I.J.P.G. in aid of racketeering activity, in violation of 18 U.S.C. §§ 1959(a)(1) and 2, as set forth and charged in Count Six of this Second Superseding Indictment, and in the course of committing said offense, did cause the death of I.J.P.G. through the use of a firearm, which killing was murder, as defined in 18 U.S.C. § 1111, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii), (j)(1), and 2.)

## Count Eight

### *(Conspiracy to Commit Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.      Paragraphs One and Two of Count Two of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      In and around November 2020, within the Eastern District of Virginia, the defendants,

**ELMER DE JESUS ALAS CANDRAY, a/k/a "German Alexander Ramirez Lopez,"
a/k/a "Buky," a/k/a "Desquiciado,"**

**HENRY LEONEL BARRERA AYALA, a/k/a "Cusuco," a/k/a "Centinela,"
a/k/a "Lil Player,"**

**JOSE MANUEL LOZANO DURAN, a/k/a "Neyka," a/k/a "Ney," a/k/a "Clandestino,"**

**ADONIS ADALBERTO MARTINEZ AYALA, a/k/a "Monito," a/k/a "Malvado,"**

and

**EVER BLADIMIR MELENDEZ GARCIA, a/k/a "Kevin Garcia," a/k/a "Tun Tun,"
a/k/a "Rifle," a/k/a "Fleri"**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and intentionally combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to murder D.A.A., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-22 and 18.2-32.

(In violation of Title 18, United States Code, Section 1959(a)(5).)

<u>Count Nine</u>

*(Conspiracy to Commit Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.    Paragraphs One and Two of Count Two of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    In and around March 2021, within the Eastern District of Virginia, the defendants,

**ELMER DE JESUS ALAS CANDRAY, a/k/a "German Alexander Ramirez Lopez,"
a/k/a "Buky," a/k/a "Desquiciado,"**

**HENRY LEONEL BARRERA AYALA, a/k/a "Cusuco," a/k/a "Centinela,"
a/k/a "Lil Player,"**

and

**EVER BLADIMIR MELENDEZ GARCIA, a/k/a "Kevin Garcia," a/k/a "Tun Tun,"
a/k/a "Rifle," a/k/a "Fleri"**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and intentionally combine, conspire, confederate, and agree with each other, with JOSE MANUEL VASQUEZ MOZ, a/k/a "Nene," a/k/a "Bombo," who is not charged herein, and with others known and unknown to the Grand Jury, to murder S.A.T.L., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-22 and 18.2-32.

(In violation of Title 18, United States Code, Section 1959(a)(5).)

<u>Count Ten</u>

*(Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.     Paragraphs One and Two of Count Two of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     On or about March 11, 2021, in Fairfax County, Virginia, within the Eastern District of Virginia, the defendants,

**ELMER DE JESUS ALAS CANDRAY, a/k/a "German Alexander Ramirez Lopez,"**
**a/k/a "Buky," a/k/a "Desquiciado,"**

and

**EVER BLADIMIR MELENDEZ GARCIA, a/k/a "Kevin Garcia," a/k/a "Tun Tun,"**
**a/k/a "Rifle," a/k/a "Fleri"**

together with JOSE MANUEL VASQUEZ MOZ, a/k/a "Nene," a/k/a "Bombo," who is not charged herein, and with others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and intentionally murder S.A.T.L., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-32 and 18.2-18, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.)

<u>Count Eleven</u>

*(Using and Carrying a Firearm During a Crime of Violence Causing Death)*

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 11, 2021, in Fairfax County, Virginia, within the Eastern District of Virginia, the defendants,

**ELMER DE JESUS ALAS CANDRAY, a/k/a "German Alexander Ramirez Lopez,"
a/k/a "Buky," a/k/a "Desquiciado,"**

and

**EVER BLADIMIR MELENDEZ GARCIA, a/k/a "Kevin Garcia," a/k/a "Tun Tun,"
a/k/a "Rifle," a/k/a "Fleri"**

did knowingly and intentionally use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the murder of S.A.T.L. in aid of racketeering activity, in violation of 18 U.S.C. §§ 1959(a)(1) and 2, as set forth and charged in Count Ten of this Second Superseding Indictment, and in the course of committing said offense, did cause the death of S.A.T.L. through the use of a firearm, which killing was murder, as defined in 18 U.S.C. § 1111, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii), (j)(1), and 2.)

<u>Count Twelve</u>

*(Conspiracy to Commit Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.      Paragraphs One and Two of Count Two of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      In and around June 2022, within the Eastern District of Virginia, the defendant,

**ELMER DE JESUS ALAS CANDRAY, a/k/a "German Alexander Ramirez Lopez,"**
**a/k/a "Buky," a/k/a "Desquiciado,"**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to murder F.R.A.R., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-22 and 18.2-32.

(In violation of Title 18, United States Code, Section 1959(a)(5).)

34

<u>Count Thirteen</u>

*(Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.      Paragraphs One and Two of Count Two of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about June 18, 2022, in Fairfax County, Virginia, within the Eastern District of Virginia, the defendant,

**ELMER DE JESUS ALAS CANDRAY, a/k/a "German Alexander Ramirez Lopez,"
a/k/a "Buky," a/k/a "Desquiciado,"**

together with others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and intentionally murder F.R.A.R., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-32 and 18.2-18, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.)

## **FORFEITURE NOTICE**

THE GRAND JURY FURTHER FINDS that there is probable cause that the property described below is subject to forfeiture pursuant to the statutes described herein.

The defendants are hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of the offense set forth in Count One of this Second Superseding Indictment, they shall forfeit to the United States, pursuant to 18 U.S.C. § 1963, the following: (1) any interest acquired or maintained in violation of 18 U.S.C. § 1962; (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over any enterprise which they have established, operated, controlled, conducted, or participated in the conduct of, in violation of 18 U.S.C. § 1962; and (3) any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of 18 U.S.C. § 1962.

Pursuant to Rule 32.2(a), the defendants are hereby notified that, upon conviction of any of the offenses set forth in this Second Superseding Indictment, they shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), all firearms and ammunition involved in or used in such violation.

As to Count One of this Second Superseding Indictment, pursuant to 18 U.S.C. § 1963(m), the defendants shall forfeit substitute property, if, by any act or omission of the defendants, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

As to Counts Two through Thirteen of this Second Superseding Indictment, pursuant to 21 U.S.C. § 853(p), the defendants shall forfeit substitute property, if, by any act or omission of the defendants, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(Pursuant to Fed. R. Crim. P. 32.2(a); Title 18, United States Code, Sections 924(d)(1) and 1963; and Title 28, United States Code, Section 2461(c).)

A TRUE BILL

Pursuant to the E-Government Act,,
The original of this page has been filed
under seal in the Clerk's Office
FOREPERSON

Jessica D. Aber,
United States Attorney

By: _____
John C. Blanchard
Natasha Smalky
Megan C. Braun
Assistant United States Attorneys